"In the name of God, Amen. July the 6th day, 1832. I, Martha Liverman and Sarah Liverman, of, c. We, being in a good state of health, and of sound mind and memory; and calling to mind the mortality of our body, and that it is appointed for all mortals once to die, do make this to be our last will and testament: and first of all we commend our souls to the hands of Almighty God that gave it; and *Page 559 
as touching such worldly goods as it hath pleased God to bless us with, we devise and dispose of in the following manner. First, we give unto our dearly beloved nephew, William Clayton, one negro man," c., "after our decease, to be and remain his and his heirs forever, to his proper use. Then we give unto our dearly beloved nephew, Edmund Clayton, one negro man,c., and we do hereby give unto him all the rest of our property, after our decease, to be and remain his and his heirs forever, to his proper use; and we do hereby ordain and appoint our worthy friend, Edmund Clayton executor of this our last will and testament."
The probate was contested by the next of kin; and the issue was tried on the last Circuit, at Tyrrell, before his Honor Judge PEARSON, when it appeared in evidence that the supposed testatrixes, who were sisters, both died within a few days of each other.
For the next of kin it was objected, that a mutual or conjoint will was unknown to the testamentary law of this country. To obviate this objection, the paper writing was propounded as the joint will of both the supposed testatrixes, and also as the sole will of each of them; and it was agreed, that if in any of these forms it could be admitted to probate, it might be admitted to be so pronounced for. His Honor thinking that probate might be had of it as a mutual or conjoint will, it was proved in that form; and the caveators appealed.
— This is a very singular case, and presents for determination, questions, which, as far as we are informed, have not before been agitated in our country. These are, 1st, whether the paper writing offered for probate, and found to be jointly executed by Martha Liverman and Sarah Liverman, can be admitted to probate as the joint will of the said Martha and Sarah: and, 2ndly, if it cannot be admitted to probate as their joint will, may it be proved as the separate will of either of them.
The paper professes, as strongly as language can *Page 560 
declare, to be the united will of Martha and Sarah Liverman; designed to take effect upon the death of both; to appoint an executor to both; and to dispose of property belonging to both. "We do make this to be our last will and testament. We command our soul to the hands of Almighty God that gave it — as touching such worldly goods as it has pleased God to bless us with, we devise and dispose of it in the following manner. — We give unto our dearly beloved nephew William Clayton, one negro man, c., after our decease, to be and remain his forever. We give unto our dearly beloved nephew, Edmund Clayton, one negro man, c.; and all the rest of our property, after our decease, to be and remain his forever. We do hereby ordain and appoint our worthy friend Edmund Clayton executor to this our last will and testament." These expressions can leave no doubt that it was the purpose of both parties to this instrument, that after they should die, the property therein mentioned should be disposed of in the manner stated; and that Edmund Clayton, as their executor, should see these dispositions carried into effect. It is a conjoint will, if a conjoint will can in law be made.
Can it be established as a joint will? I have no hesitation in answering this question in the negative. A will is defined to be a legal declaration of a party's intentions, which he wills to be performed after his death. It follows, from the definition, that it must be the sole act of one person, declaring his intentions, in regard to what he wants performed, when he shall be no more. It is the exercise of a privilege which belongs to the owner of property, of declaring a law for continuing that property in such persons as he pleases after his death. Deriving its efficacy solely from its being his final sentence; inoperative during his life; and having exclusively a posthumous character, it remains ambulatory and revocable up to the last moment of his existence, and then becomes, by virtue of his definitive determination, a positive and absolute rule. In this view a will differs essentially from a deed; and therefore the first deed, but the last will, is of the greater efficacy. So long as a man retains a testable *Page 561 
capacity — and without a testable capacity he can make no will — he may alter, abrogate, or republish his will. It is not in his power to make a will which he may not alter or revoke, because no man's act can "alter the judgment of law to make that irrevocable, which is of its nature revocable." Vynior's Case, 8 Coke's Rep. 162. Swin. Pt. 7, sec. 14, pl. 2. From these properties of a will, it also follows, that it cannot be conjoint. If conjoint, it is to take effect after the death of both, not upon the death of one. If conjoint, then it is either irrevocable except by the act of both — which would deprive each testator of the power of altering his intentions in regard to the disposition of his own property — or it is revocable by the act of either, which would give to one the power of changing the disposition of another's property. In Williams on Executors, vol. 1, p. 9, we find it laid down, "Another essential distinction between a deed and a will may be mentioned, that there cannot be a conjoint or mutual will; an instrument of such a nature is unknown to the testamentary law of this country." For this the author quotes 1 Cow. Rep. 268, in Lord MANSFIELD's judgment in Darlington v. Pultery. Hobson v.Blackburn, 1 Addam's Eccl. Rep. 277; and he is fully supported by his references.
Perfectly satisfied that the paper writing propounded cannot be admitted to probate, as the joint will of Martha and Sarah Liverman, I am next called upon to decide whether it may be established as the will of either of them, and in my opinion, this question must also be answered in the negative. An insuperable objection in the way of pronouncing this the several will of either of the parties is, that it does not purport to be the separate will of either. It is wholly a joint act, and in no respect a several act. It is a joint declaration of a joint purpose as to the disposition of joint property, after the death of both the parties, by a joint executor, appointed to carry into effect this arrangement; but it contains no declaration of the separate intentions of either in regard to her property, to be executed at her death, nor the constitution of any executor to carry into effect her intention. To pronounce for it as a several will, is to adjudged it to be what it is not. *Page 562 
It has been insisted in argument, that as the instrument contains unequivocal evidence of the intention of both, it necessarily shows the intention of each of the parties; and therefore is the will of each. Assuredly each did intend the disposition contained in the supposed will, such and in the form therein declared, but it does not thence follow, that either definitely intended such a disposition of her interest therein, after her death. It does not conclusively appear, that if either had made a separate testament, such testament might not have contained a different disposition. If, from the joint declaration, we are to form any inference
as to the separate purpose of each, I should conclude, that at all events, it was designed that the survivor should take for the term of her life, the property of the other. In this respect, at least, the will of each would have varied in terms from that before us. It would have varied also in itsoperation. For if this be held the separate will of each, then, upon the death of one, her whole interest devolved upon her executor, in trust for the legatees therein named, after the death of the other, and, until that event, in trust for the next of kin of the deceased. Besides, non constat, but for the purpose of carrying into execution the joint arrangement wholly, and in the form agreed upon, an entirely different disposition would have been made. Both purposed that the legatees should take the respective things given, and as they were given, but neither may have desired that they should take, at all events, an undivided moiety thereof. It may have been, that the arrangement contemplated, was, as a whole, deemed well suited to the interest, advancement, and comfort of the common family of the parties, and may have accorded with the feelings which they entertained towards the human beings who constituted the principal part of the subject of this arrangement, while the same considerations might have prompted each, in making an independent will, to select different legatees, and to bequeath in a different way. But it is not necessary that we should see a separate purpose, different from that evidenced by the joint act; it is enough that the joint act contains no definitive evidence of the separate purpose of either. *Page 563 
Although no instrument has operation as a will until the death of the testator, yet if it be not valid as a testamentary instrument when executed, no circumstances occurring afterwards, (short of a republication by the testator,) can make it such. The determination, therefore, of the question, whether this be the separate will of one of the parties, must be the same as it would have been, if the other were yet alive, or had died after revoking this instrument as her will, and making a different testamentary disposition of her property.
Another, and, as I think, equally insuperable objection to the probate of this instrument as a will, is, that whatever name may be given to it by the parties, it is, on its face, an agreement or compact; and cannot, therefore, be a will. Upon the face of the instrument, there is manifestly an agreement between two, for the disposition of the property of both. It declares the assent of two minds to one common purpose, which neither was individually competent to effect; and it is, therefore, a compact. Now, it is immaterial in what form a will is made, whether it be in form of a deed-poll, indenture, marriage settlement, bond, letter, note, draft, receipt or endorsement, provided, that it evinces the fixed independent purpose of an individual, with regard to the disposition of his property after his death. So, an instrument, testamentary in its form, if it manifests no more than a compact, or an agreement between two, must be treated as such, and cannot be converted into an instrument testamentary in its character. It does not become us to say whether this agreement, or compact be well executed, and if not, whether it be one the execution of which, could be enforced by either of the parties, or can now be enforced by those who were to derive benefit from it. How it may be considered, when brought before the proper forum for the adjudication on agreements or compacts, a Court of probate is not competent to inquire. When such a Court sees that it declares the agreement of two, and not the separate volition of one, a conclusion in which an interchange of opinions, and a compromise of interests has resulted in regard to a subject exclusively belonging to neither; and not the spontaneous *Page 564 
determination of one claiming to exercise sole dominion; such a Court cannot pronounce it the will of either. To use the language of Lord ROSSLYN, in Warner v. Matthews, 4 Ves. Jun. 209, it is not a complete definite rule and law made by the owner for the settling of her fortune after death.
I rely with more confidence on the correctness of this opinion because it has the sanction of one of the ablest judges on testamentary law. The case of Hobson v. Blackburn, 1 Addams' Reps. 274, (2 Eng. Eccl. Rep. 115,) is strikingly similar to that before us. Martha, Susanna, and Joshua Hobson, sisters and a brother, executed an instrument in writing, which, in the beginning, they called an assignment, but, in the end, expressly declared their will, "in the case of each other's decease." By it, provision was made upon the death of one, for the benefit of the two surviving, and upon the death of two, for the benefit of the last survivor, with limitations thereafter to their other brothers and sisters, and they thereby constituted each other with their brothers William and George, executors thereof. Joshua died, and a probate of this instrument as his will was granted to his two sisters, Martha and Susanna, and his brother George, three of the executors therein named. Martha afterwards died, having made, as was alleged, a separate testamentary disposition of her property. Probate of the joint will as the will of Martha, deceased, was prayed by George Hobson, one of the surviving executors therein named: and letters of administration, with the separate will annexed as that of the same deceased, were prayed by her nieces who were legatees in it. The allegation propounding the joint will was in the common form, except thatit pleaded the death of Joshua Hobson, and that probate of the said jointwill as to the effects of the said Joshua had been taken by the deceased. The admission of this allegation was opposed. Sir JOHN NICHOLL declared that he had no hesitation whatever, in rejecting the allegation propounding the joint will, as that of the party deceased, on the principle that an instrument of this nature is unknown to the testamentary law of this country, or in other words, that it is unknown as a will to the law *Page 565 
of this country at all. "It may," he observes, "for ought that I know, be valid as a compact. It may be operative in equity, to the extent of making the devisees of the will, trustees for performing the deceased's part of his contract. But these are considerations wholly foreign to this Court, which looks to the instrument entitled to probate as the deceased's will, and to that only. The allegation plainly proceeds upon a notion of the irrevocability of the instrument which it propounds as the will of the deceased. Why this very circumstances destroys its essence as a will, and converts it into a contract, a species of instrument over which this Court has no jurisdiction. Upon these broad, and, as I apprehend, sufficiently intelligible grounds, I reject this allegation."
The counsel for the plaintiff, in commenting upon the case of Hobson v.Blackburn, insists that it decided no more than that, as the will of Martha Hobson, it was revocable, and had been in fact revoked by her testamentary disposition of a subsequent date. Certainly I do not so understand it. According to the practice in the Prerogative Court. (see note page 11 of 1 Eng. Ecl. Rep.) the facts intended to be relied on in support of any contested suit, are set forth in a plea which is termed an allegation. This is submitted to the inspection of the counsel of the adverse party, and if it appears to them objectionable, either in form or substance, they oppose the admission of it. If the opposition goes to the substance of the allegation, and is held to be well founded, the Court rejects it; by which mode of proceeding, (analogous to that of a demurrer to a bill in equity,) the suit is terminated without going into any proof of the facts. The case was heard on opposition to the admission of the allegation propounding the joint will as the separate will of the supposed testatrix, and not upon the allegation propounding the subsequent will. The allegation opposed did not bring the question as to the execution of the subsequent testamentary paper before the Court. The sufficiency of the allegation opposed, was the sole matter, then under consideration and the allegation was rejected not because the will propounded had been revoked, that would be a matter for subsequent *Page 566 
inquiry, if the allegation should be admitted, but because the instrument so propounded as the will of the deceased, was a conjoint or mutual will, and, therefore, as a will, entirely unknown to the law. The only remark respecting the "notion of its irrevocability," was to explain more distinctly the reason why a conjoint will was unknown to the testamentary law. Such an instrument is regarded as a compact. Compacts are not wills and differ from them, (besides in many other important particulars,) essentially in this, that compacts (if valid) are irrevocable, while wills are revocable.
The counsel has also remarked, that in the case decided by Sir JOHN NICHOLL, as also in the case of Dufour v. Percira, Dickens Rep. 419, probate was in fact granted on a joint will, as the will of the testator who died first, and he insists that this is some evidence, that the words of that learned judge, are not to be understood in the broad sense attributed to them. I think, that the probates thus granted, without contestation and sub silentio, afford no evidence to this purpose. The mode of proceeding was no doubt, by what is called a simple condidit, setting forth the execution of an alleged will, and the sanity of the testator, and did not bring to the notice of the Court, the joint character of the instrument propounded.
The cases of Dufour v. Percira, Walpole v. Oxford, 3 Ves. Jun. 402, andHinckley v. Simmons, 4 Ves. Jun. 160, are cases in which conjoint or mutual wills have been set up, or attempted to be set up in equity, not as wills
but as compacts, and need no further explanation than that given in the judgment of Sir JOHN NICHOLL, already stated.
In my opinion, the judgment below must be reversed. As the verdict was general, and not rendered subject to the opinion of the Court, upon the legal objections taken upon the trial, we can do no more than reverse the judgment, and order a venire de novo.
RUFFIN, Chief Justice. — I fully concur in both the reasoning and conclusions found in the opinion of Judge GASTON. *Page 567